CV 07 4588

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ NOV 02 2007 ★
LONG ISLAND OFFICE

UNITED STATES DISTRCT COURT
EASTERN DISTRICT OF NEW YORK

(S.F.)

---------------------------------------------------------X

ADVANCED CARE, INC.,

                            Plaintiff,

-against-

DEPARTMENT OF HEALTH & HUMAN
SERVICES,

                            Defendant.

---------------------------------------------------------X

VERIFIED COMPLAINT

JURY DEMAND REQUESTED

BIANCO, J.

INDEX #

       ADVANCED CARE, INC. (hereinafter ADVANCED), by and through its attorneys DUNCAN, FISH & VOGEL, LLP., complain of the defendant DEPARTMENT OF HEALTH & HUMAN SERVICES (hereinafter DHHS) as follows:

## NATURE OF ACTION

    1.    This action is predicated upon the Action and Order of Medicare Appeals Council dated September 17, 2007, denying the request for review in the claim titled "In the Case of Advanced Care, Inc.", claim for supplementary medical insurance benefits (part B) for WILLIAM R. COOK, deceased (beneficiary) pursuant to HIC # 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A ALJ appeal # 1-19373291 (see attached exhibit "A").

    2.    Plaintiff maintains that the determination set forth therein is an abuse of discretion, arbitrary and capricious, and that the findings and conclusions are not

supported by the substantial evidence or facts of the case. Further, the determination violates general public interest and policy affecting both Plaintiff and similarly situated providers of care, and that the Administrative Law Judge's (ALJ) determination did not consider all the relevant facts to be set forth herein. Additional claims shall be made for estoppel, quantum meruit, and a declaratory judgment that the services were medically necessary, physician ordered and properly rendered.

## PARTIES

3. At all times hereinafter, Plaintiff, ADVANCED is New York corporation with its principal place of business located at 931-D Conklin Avenue, Farmingdale, New York 11735.

4. ADVANCED is in the business of providing both pharmaceutical and nursing components in the provision of various prescribed medications and other treatments by infusion therapy.

5. Upon information and belief, Defendant DHHS is a cabinet level division of the United States Government with its principal place of business located at 330 Independence Avenue, Cohen Building, Room G-644, Washington, DC. 20201

## JUSIRDICTION AND VENUE

6. Jurisdiction and venue are statutory pursuant to 1869 (b) of the Social Security Act, 42 U.S.C. 1395FF(b).

7. Venue is in the United States District Court for the Eastern District of New York in that it is the judicial district in which the Plaintiff has its principal place of business.

8. The amount in controversy is ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS.

## FACTS

9. The patient, WILLIAM R. COOK (hereinafter COOK) (now deceased) was referred to ADVANCED CARE, INC. by ST. VINCENT'S HOSPITAL in New York on June 18, 2002 for TPN therapy to be delivered at his home. At the time it was determined Mr. Cook maintained insurance with both Medicare and ADAP.

10. That this was the first Medicare TPN patient that ADVANCED had provided services for, although ADVANCED had been providing TPN therapy and was well regarded by members of the health care community as a quality provider of infusion services since 1990.

11. The prescribed, medically necessary therapy for Mr. Cook commenced in his home on June 25, 2002.

12. The Plaintiff's Billing Department faxed a Certificate of Medical Necessity (CMN) to Mr. Cook's treating physician, Dr. Dalton and asked that it be completed and signed in order that ADVANCED could bill for the services. The CMN came back allegedly signed by Dr. Dalton dated July 18, 2002, almost a month after the request and was submitted along with ADVANCED's invoices.

13. On August 6, 2002, a Medicare Remittance Notice was received denying the services of June 25, through July 2 with no reason given. This, in spite of the fact, that the services were being rendered at a physician's directive and were medically necessary. A biller for Plaintiff contacted Medicare and was told that certain materials

3

required in the CMN, including the patient's weight were not included by the doctor and had to be resubmitted.

14. The additional information and 7 invoices for ongoing services were again mailed to Medicare on August 16, 2002.

15. Plaintiff, in spite of the non-payment, continued to provide the medically necessary services to COOK.

16. A Medicare Remittance Notice dated September 4, 2002 was received denying payment. This denial, once again, contained no explanation. Plaintiff nevertheless continued to provide the TPN services.

17. The Plaintiff continued to submit invoices for services provided routinely by electronic submission, but was receiving no responses from Defendant nor did it receive any responses from Defendant to numerous phone calls placed to attempt to learn what the problem with the submissions were.

18. On May 15, 2003, almost a year after Plaintiff continued to provide the necessary medical care to Mr. Cook without payment from Medicare, Plaintiff's billing supervisor sent a formal request for a claim review.

19. A representative of Medicare spoke with Plaintiff's Billing Supervisor on a number of occasions between May 15, 2003 and November 17, 2003, and instructed the supervisor to forward the materials directly to the Medicare Representative, Michelle Baransky who would assist in getting the claims paid. Medicare continued to advise Plaintiff this was a technical problem not one involving the nature or rendering of the services.

20. When no response was received, Plaintiff filed a Complaint with the New York State Department of Insurance (Complaint # CSB-314554). The New York State Department of Insurance responded on December 15, 2003 with an explanation from Medicare that the documentation on the doctor's CMN did not have a proper physician's signature. This was the first notice to ADVANCED in over a year of servicing the Medicare recipient that the physician's signature was being questioned.

21. Plaintiff regularly and continually placed the needs of the patient ahead of its financial situation and continued to provide medically necessary TPN services (at this point in time the patient was also being treated with foscarnet and ceftazidine). The Billing Supervisor faxed to the physician a request that he resign and redate the CMN in issue. This took place on December 18, 2003. The physician's office returned the 3 signed CMN's but they again contained the original date of June 25, 2002.

22. The biller, assuming this to be a simple error in dates by the physician added the date of December 25, 2003 to each of the CMN's, as services were still continuing to be provided and resent all the claims to Medicare.

23. In spite of the medical necessity of the services rendered, denials again were received on February 10 - 13, 2004.

24. During this period, Plaintiff made numerous attempts to contact people at Medicare to clarify the situation and to explain that the problem was beyond its control in that the doctor was no longer treating this patient, and being somewhat uncooperative in signing and completing the necessary CMN materials and unfortunately, either did not know how to complete the proper response or failed to respond.

25. Plaintiff at no time abandoned COOK and, in spite of non-payment to its detriment continued to provide care and services.

26. On December 15, 2004, all claims and supporting documentation for the services rendered were sent to Medicare for appeal. In spite of medical records and the doctor's statement supporting medical necessity, an unfavorable response was received on February 17, 2005, stating that therapy was not medically necessary. This decision was made by someone who had never examined Mr. Cook nor, upon information, had anyone from Medicare spoken with the physician.

27. Plaintiff sent a further appeal on July, 2005, requesting an in person hearing with the Hearing Officer. Although initially scheduled for September 21st the hearing was rescheduled to October 20, 2005.

28. On November 15, 2005, yet another unfavorable decision was received.

29. At no time during any of these conversations, hearings or appeals did Plaintiff learn the basis for the adverse determinations.

30. The basis for the determination of these decisions was not learned until the file was given to Plaintiff's Director of Operations who determined that although the services were medically necessary the CMN had not been filled out correctly. In essence, Plaintiff was having being denied reimbursement, although the medical services were provided and necessary, because paperwork was not completed properly by the patient's physician, a third party, not employed by Plaintiff. She further noted that the charges for the foscarnet and other medical supplies were actually underbilled. (At this point in time the Billing Supervisor was removed from her position).

31. Once again, the physician's office was contacted and asked to complete yet another CMN and sign the statement recertifying the period as required by Medicare. The physician also provided a letter acknowledging that the original forms were filled out incorrectly by his office due to human error. These forms were not returned by the physician's office to Plaintiff until January 6, 2006.

32. A notice for a telephonic hearing dated March 31, 2006 was received and a hearing was scheduled for April 19, 2006 with Administrative Law Judge (ALJ) Steven Sterner.

33. The corrected CMN's submitted by the physician's office were forwarded to PAULA GOODRICH at the ALJ's office. Although she questioned the revision date on the CMN's it was determined that the physician included that date to be interpreted as the date the <u>CMN's were corrected by him</u>. The ALJ's representative advised the Operations Director of Plaintiff to contact DMERC, region A to determine the consequences for having that date filled out. On April 15, a representavtive of DMERC region A, after allegedly conferring with her supervisor and being informed about the claims in question and the CMN's, advised Plaintiff that both believed that it would pose no problem as the physician had explained the issue on a timely manner prior to the ALJ hearing.

34. The hearing was held on April 19, 2006, and while Judge Sterner did not dispute the fact that the patient's therapy was medically necessary, based upon Plaintiff's documentation he determined that the CMN was unacceptable and not within the guidelines thereby issuing an unfavorable decision on May 30, 2006.

7

35. Most importantly, the ALJ acknowledged to Plaintiff's representative during the hearing that the services were properly rendered and, in accordance with COOK'S physician, were medically necessary.

36. That decision did permit Plaintiff to request a new review by submitting same to Medicare Appeals Counsel.

37. Once again, the treating physician (it should be noted that the patient in issue had previously died and plaintiff had no contact with this physician during this time) was contacted and requested to complete a new CMN without adding any revised dates. The corrected CMN's were not received back by ADVANCED until July 13, 2006.

38. A request for a further review was submitted to the Medicare Appeal Council on July 14, 2006.

39. A Notice of Action dated September 17, 2007, was received from the Medicare Appeals Council by Plaintiff, once again denying the claim.

40. After a further review with the current billing staff of all clinical and billing charts for every Medicare recipient, the original CMN's dated June 25, 2002 were discovered.

41. Upon information and belief, the CMN requirement of a number of years ago is no longer in use and was replaced by the Durable Medical Equipment Information Form (DIF) which, while similar in format, is completed solely by the provider, not the ordering physician.

42. Upon information and belief, so many CMN's were improperly filled out by the physicians not fully understanding their responsibility nor, in some instances,

cooperating because patients were no longer being treated, had been discharged, were deceased or patients had gone to other physicians that the CMN failures had become a debacle leaving the providers of medically necessary services suffering the consequences of forms incorrectly completed by people having no vested interest in seeing that they were completed accurately.

43. It is inequitable and patently unfair that having expended ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS of its funds to care for a total stranger and, the ALJ acknowledging that the services rendered were medically necessary, that the reimbursement be denied due to a technical error which is the result of a third party having nothing to do with nor employed by Plaintiff.

44. That the determination of the ALJ was arbitrary and capricious.

45. That the determination being arbitrary and capricious is further compounded by the fact that the basis of the denial here became such a regular method of denial due to the failure of the third party physicians to either cooperate and/or complete the necessary paperwork that the methodology for payment has been changed and the basis for the denial herein is no longer in effect.

46. The determination of the ALJ is arbitrary and capricious and should be reversed resulting in the payment of ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS to plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION

47. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "46" with the same force and effect as if more fully set forth at length herein.

48. Plaintiff seeks a declaratory judgment determining that the services rendered herein were justified, medically necessary and properly provided.

49. That as a result thereof, Plaintiff is due a reimbursement from Defendant for the proper and medically necessary services in an amount believed to be ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS.

50. Plaintiff is without adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF ACTION

51. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "50" with the same force and effect as if more fully set forth at length herein.

52. That Plaintiff throughout the time it cared for the patient attempted, without success, to speak with the various representatives of Defendant in an attempt to clarify what, if anything else was needed to insure that Plaintiff received payment.

53. At no time did anyone advise Plaintiff that the issue was simply one of the signature of the physician and/or the date entered by the physician.

54. It was never suggested that the services it was rendering were either not medically necessary nor not being provided properly.

55. That the failure of Defendant to pay for the proper medical necessary services on behalf of the patient is tantamount to an unjust enrichment by the Defendant and the taking advantage of a Plaintiff who placed the health and welfare of a patient ahead of the financial ramifications, should it not be reimbursed, due to the failure of the doctor to cooperate, complete the form correctly nor receive proper advice from the Defendant.

56. Defendant has been unjustly enriched in the amount of ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS.

## AS AND FOR A FOURTH CAUSE OF ACTION

57. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "56" with the same force and effect as if more fully set forth at length herein.

58. Based upon the totality of the facts herein, and the determination of the ALJ that the services rendered were proper and medically necessary but had to be denied due to the improper signature on the CMN, the Defendant should be estopped from taking said position as same would be inequitable and a denial of due process.

59. Defendant's actions damaged Plaintiff in the amount of ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS.

WHEREFORE, Plaintiff seeks judgment as follows:

1. The determination of the ALJ is arbitrary and capricious and should be reversed resulting in the payment of ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS to plaintiff.

2. Plaintiff seeks a declaratory judgment determining that the services rendered herein were justified, medically necessary and properly provided and that Plaintiff is properly due ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS. Plaintiff is without adequate remedy at law.

3. Defendant has been unjustly enriched in the amount of ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS.

4. Based upon the totality of the facts herein, and the determination of the ALJ that the services rendered were proper and medically necessary but had to be denied due to the improper signature on the CMN, the Defendant should be estopped from taking said position as same would be inequitable and a denial of due process and Defendant should be directed to reimburse Plaintiff the sum of ONE HUNDRED FOURTEEN THOUSAND ($114,000.00) DOLLARS.

5. Such other and further relief as to the Court may deem just and proper in the circumstances, together with interest and costs of this action.

Dated: October 31, 2007
Smithtown, New York

Yours, etc.

DUNCAN, FISH & VOGEL, LLP.
BY: RICHARD E. FISH, ESQ. (REF-6300)
Attorneys for Plaintiff
317 Middle Country Road
Suite #5
Smithtown, New York 11787
(631) 979-8001

TO: GENERAL COUNSEL
DEPARTMENT OF HEALTH & HUMAN SERVICES
299 INDEPENDENCE AVENUE S.W.
WASHINGTON, D.C. 20201

U.S. ATTORNEY
EASTERN DISTRICT OF NEW YORK
LONG ISLAND COURTHOUSE
100 FEDERAL PLAZA
CENTRAL ISLIP, NEW YORK 11722

ATTORNEY GENERAL OF THE UNITED STATES (WASHINGTON, D.C.)
555 4th STREET, NW
WASHINGTON, D.C. 20530

# CORPORATE VERIFICATION

STATE OF NEW YORK  )
                   ) ss:
COUNTY OF SUFFOLK  )

STEWART GITTELMAN, being duly sworn, deposes and says:

I am the President of ADVANCED CARE, INC. I have read the forgoing Verified Complaint and know the contents thereof; that the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

_____
STEWART GITTELMAN

Sworn to before me this
30 day of October , 2007

RICHARD E. FISH
Notary Public, State of New York
No. 52-4664418
Qualified in Suffolk County
Commission Expires March 30, 19

NOTARY PUBLIC

Exhibit A

DEPARTMENT OF HEALTH AND HUMAN SERVICES
DEPARTMENTAL APPEALS BOARD

**ACTION AND ORDER OF MEDICARE APPEALS COUNCIL
ON REQUEST FOR REVIEW**

**In the case of**

Advanced Care Inc.
(Appellant)

William R. Cook, deceased
(Beneficiary)

Health Now NY (DMERC A)
(Contractor)

**Claim for**

Supplementary Medical
Insurance Benefits (Part B)

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A
(HIC Number)

1-19373291
(ALJ Appeal Number)

The Medicare Appeals Council has carefully considered the request for review of the Administrative Law Judge's (ALJ's) decision dated May 30, 2006. The ALJ decision concerned a parenteral pump (B9004), administration kits (B4224), parenteral lipids (B4197, B4186) and supply kits (B4220) provided to the beneficiary from June 25, 2002, through May 2, 2003. The regulations provide that the Medicare Appeals Council will grant a request for review where: (1) there appears to be an abuse of discretion by the ALJ; (2) there is an error of law; (3) the ALJ's action, findings, or conclusions are not supported by substantial evidence; or (4) there is a broad policy or procedural issue that may affect the general public interest. The regulations also provide that if new and material evidence is submitted with the request for review, the entire record will be evaluated and review will be granted where the Council finds that the ALJ's action, findings or conclusion is contrary to the weight of the evidence currently of record. See 20 C.F.R. § 404.970, incorporated by reference in 42 C.F.R. § 405.856.

The Medicare Appeals Council has considered the contentions received in connection with the request for review. The Council has concluded that there is no basis under the above regulations for granting the request for review. In reaching this

conclusion, the Council considered the appellant's contention that the DMERC has advised the appellant a revision to the certificates of medical necessity "would not pose any issue with the [ALJ]."

The Council finds no merit in the appellant's arguments that the ALJ should have accepted the revisions of the initial certification and the recertification at issue in this case. The ALJ was within his authority to find the revisions ineffective, particularly since the certificates of medical necessity were revised several years after the services were provided. Accordingly, the request for review is denied. The ALJ's decision stands as the final decision of the Secretary.

MEDICARE APPEALS COUNCIL

M. Susan Wiley
Administrative Appeals Judge

Date: SEP 17 2007